IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TIMOTHY A. ROBINSON,
     Petitioner,

vs.                              Case No.: 3:15cv496/MCR/EMT

JULIE JONES,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (ECF No. 15). Petitioner filed a response in opposition to the motion (ECF No. 21).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that

Respondent's motion to dismiss should be granted, and the habeas petition dismissed as untimely.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is established by the state court record (ECF No. 15).[1]  Petitioner was indicted in the Circuit Court in and for Escambia County, Florida, Case No.  89-CF-1139, on four counts of first degree premeditated murder (Counts 1–4), one count of attempted first degree murder (Count 5), six counts of kidnapping with a firearm (Counts 6–11), two counts of sexual battery with great force with a firearm (Counts 12 and 13), one count of conspiracy to traffic more than 400 grams of cocaine (Count 14), one count of burglary of a dwelling with assault and a firearm (Count 15), and two counts of robbery with a firearm (Counts 16 and 17) (Ex. A).  Following a jury trial, Petitioner was found guilty as charged on all counts (Ex. B).  On September 26, 1989, Petitioner was sentenced as follows:

Count 1:  death

Count 2:  death, consecutive to Count 1

Count 3:  death, consecutive to Count 2

_____

[1] Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (ECF No. 15) unless otherwise indicated.  Additionally, if a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Count 4:  death, consecutive to Count 3

Count 5:  30 years, consecutive to Counts 1–4

Counts 6–13:  concurrent terms of life imprisonment, consecutive to Counts 1–4, but concurrent with Count 5

Count 14:  30 years, consecutive to Counts 1–4, but concurrent with Counts 5–13

Count 15:  30 years, consecutive to Counts 1–14

Counts 16 and 17:  concurrent terms of life imprisonment, consecutive to Counts 1–4, but concurrent with Counts 5–15

(Ex. C).  Petitioner appealed the judgment to the Supreme Court of Florida, Case No. 74, 945 (*see* Ex. D).  The Supreme Court of Florida affirmed the convictions and sentences on June 25, 1992, and denied Petitioner's motion for rehearing on October 15, 1992 (Exs. G, H, I, J).  Robinson v. State, 610 So. 2d 1288 (Fla. 1992).  The mandate issued November 16, 1992 (Ex. K).  Petitioner filed a petition for writ of certiorari in the Supreme Court of the United States (Ex. L).  The Court denied the petition on February 28, 1994 (Ex. N).

On August 1, 1994, the State designated collateral counsel to represent Petitioner in collateral matters, and the Supreme Court of Florida set a deadline of July 1, 1995, for counsel to file a motion under Rule 3.851 of the Florida Rules of Criminal Procedure (*see* Ex. O at 15).  Petitioner's counsel filed a Rule 3.851 motion in the

state circuit court on July 3, 1995 (Ex. O at 16–188).  A limited evidentiary hearing

was held on April 21–23, 2009 (*see* Ex. P at 3).  The circuit court denied the post-

conviction motion in an order rendered September 4, 2009 (*see id.*).  Petitioner

appealed the decision to the Supreme Court of Florida, Case No. SC09-1860 (*see* Ex.

P).  While the appeal was pending, Petitioner filed a petition for writ of habeas corpus

in the Supreme Court of Florida, Case No. SC10-695 (Ex. U).  On July 12, 2012, the

Supreme Court of Florida reversed the circuit court's decision on the Rule 3.851

motion as it related to Petitioner's claim of ineffective assistance of counsel during the

penalty phase (Ex. S).  Robinson v. State, 95 So. 3d 171 (Fla. 2012).  The court

vacated Petitioner's death sentences and remanded for imposition of life sentences on

Counts 1–4 (*id.*).  In the same decision, the Supreme Court of Florida denied

Petitioner's habeas petition (*id.*).  The mandate issued August 2, 2012 (Ex. T).

On October 30, 2012, the state circuit court entered a corrected judgment and

sentence in accordance with the state supreme court's decision (Ex. X).  On November

19, 2012, Petitioner sent a "Notice of Appeal" to the federal court for the Northern

District of Florida, stating his intent to "appeal" the state court decision (Ex. Y).  A

copy of Petitioner's notice of appeal was docketed in the state circuit court (*see* Ex.

JJ, docket entry 11/30/2012), and transmitted to the Florida First District Court of

Appeal ("First DCA"), Case No. 1D12-6012, where it was treated as a notice of appeal of the corrected judgment and sentence issued in the circuit court (Ex. Z).  On April 4, 2013, and May 7, 2013, the First DCA directed Petitioner to either pay the appellate filing fee or seek an order of insolvency from the circuit court (*see* Ex. AA).  On June 4, 2013, the First DCA dismissed the appeal for Petitioner's failure to comply with the orders of April 4 and May 7, 2013 (*see id.*).  On June 20, 2013, Petitioner filed a motion for reconsideration (Ex. BB).  On July 17, 2013, the First DCA ordered Petitioner to file a copy of the order being appealed within 20 days (Ex. CC).  On August 12, 2013, the court extended the deadline to September 6, 2013 (Ex. DD).  On September 25, 2013, the First DCA denied Petitioner's motion for reconsideration (Ex. EE).  On November 7, 2013, Petitioner filed a "Notice of Appeal" in the Supreme Court of Florida, Case No. SC13-2243 (Exs. FF, GG).  On December 2, 2013, the Supreme Court of Florida directed Petitioner to serve an initial brief on jurisdiction by December 17, 2013 (Ex. GG).  By separate order issued the same date, the Supreme Court of Florida directed Petitioner to pay the filing fee or file an order of insolvency from the First DCA by January 2, 2014 (*see* Ex. HH).  On January 28, 2014, the Supreme Court of Florida dismissed Petitioner's petition for review, due to

his failure to comply with the order directing him to pay the filing fee or file an order of insolvency (Ex. II).  Robinson v. State, 134 So. 3d 449 (Fla. 2014) (Table).

Petitioner commenced the instant federal habeas action on November 2, 2015 (ECF No. 1).[2]  He asserts the following claims:

> Ground One: "DNA Evidence:  Denied independent DNA expert witness; denied independent DNA testing and review; denied Frye hearing; inadmissible DNA evidence admitted into evidence at trial in spite of overwhelming evidence of band shifting; no chain of custody established; lost evidence and or tampering; tampering and or cross contamination; changes made to protocol changes [sic] made to standard operation procedural manual of Cellmark Diagnostics."
>
> Ground Two:  "Improper, illegal shackling at, during trial."
>
> Ground Three:  "Ineffective assistance of counsel."
>
> Ground Four:  "Disproportion of sentence."

(ECF No. 1 at 13–51).[3]

## II.    ANALYSIS

---

[2] Petitioner did not mail his petition from the prison (*see* ECF No. 1 at 52–53); therefore, the "mailbox rule" does not apply.  *See* Houston v. Lack, 487 U.S. 266, 270, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988) (when a prisoner uses the prison mail system to file a document with a court, the document is deemed filed on the date prisoner delivers it to prison authorities for forwarding to the court).  Petitioner's § 2254 petition is deemed filed when it was received by the clerk of court, on November 2, 2015 (*see* ECF No. 1 at 1).  *See* Fed. R. Civ. P. 5(d)(2) (a paper is filed by delivering it to the clerk of court).

[3] The page references to the parties' pleadings reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

A one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. *See* 28 U.S.C. § 2244(d)(1). The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent argues that the appropriate statutory trigger for the federal limitation period in this case is the finality date of the judgment of conviction, pursuant to § 2244(d)(1)(A) (*see* ECF No. 15 at 5–8).  Respondent asserts that the finality date is April 28, 2014, which is 90 days from January 28, 2014, the date the Supreme Court of Florida dismissed Petitioner's petition for review of the corrected judgment.  Respondent contends Petitioner had one year from April 28, 2014, or until

April 28, 2015, to file his § 2254 petition (*id.* at 8).  Respondent contends the instant petition, filed on November 2, 2015, is untimely, because it was filed 188 days after the one-year federal deadline expired (*id.*).

The court will first calculate the federal filing deadline using the "finality date" trigger, and then determine whether Petitioner has demonstrated that a different trigger applies. The judgment becomes final for purposes of § 2244(d)(1)(A) upon expiration of the 90-day period in which a defendant may seek direct review of his conviction in the United States Supreme Court.  The 90-day period runs from the date of entry of the judgment sought to be reviewed.  *See* <u>Chavers v. Sec'y, Fla. Dep't of Corr.</u>, 468 F.3d 1273, 1275 (11th Cir. 2006).  Federal Rule of Civil Procedure 6(a) provides that "[i]n computing any period of time prescribed or allowed by . . . any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included."  Fed. R. Civ. P. 6(a); *see also* <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA).

Calculating the finality date in the manner most favorable to Petitioner, the 90-day period for seeking certiorari review in the United States Supreme Court was triggered by the Supreme Court of Florida's dismissal of Petitioner's petition for

review, on Tuesday, January 28, 2014, and it expired 90 days later, on Monday, April 28, 2014. Therefore, the statute of limitations began to run on April 29, 2014, the next day. Petitioner had one year from that date, or until April 29, 2015, to file his § 2254 petition. *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira v. Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).

In response to Respondent's statute of limitations defense, Petitioner argues Respondent hindered his access to the courts by denying him access to legal materials and services (ECF No. 21 at 6–25). It is unclear whether Petitioner is arguing that this circumstance warrants a statutory trigger later than the "finality date" of April 28, 2014, or whether he is arguing that this circumstance warrants equitable tolling of the federal limitations period. Therefore, the court will liberally construe his response as arguing both.

To extend the triggering of the statute of limitations under § 2244(d)(1)(B), Petitioner must show that (1) there was governmental action, (2) in violation of the Constitution or laws of the United States, (3) which prevented him from filing his § 2254 petition, and (4) which action has been removed. *See* Akins v. United States,

204 F.3d 1086, 1090 (11th Cir. 2000).[4]  The mere inability of a prisoner to access

legal materials and services is not, in itself, an unconstitutional impediment.  *See id.*

To show an impediment which would trigger the later commencement date for the

one-year limitation period, Petitioner must demonstrate both actual harm or injury,

that is, that he was actually prevented from exercising his right of access to courts to

attack his convictions, and that the impediment was unconstitutional because it was

not "reasonably related to legitimate penological interests."  *Id.* (quoting <u>Lewis v.

Casey</u>, 518 U.S. 343, 361, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)) (other citations

omitted).

 "Because the time period specified in 28 U.S.C. § 2244 is a statute of

limitations, not a jurisdictional bar, the Supreme Court has held § 2244(d) does not

bar the application of equitable tolling in an appropriate case."  <u>Cole v. Warden, Ga.

State Prison</u>, 768 F.3d 1150, 1157 (11th Cir. 2014) (citing <u>Holland v. Florida</u>, 560

U.S. 631, 645, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)).  "[A] petitioner is entitled

to equitable tolling only if he shows (1) that he has been pursuing his rights diligently,

and (2) that some extraordinary circumstance stood in his way and prevented timely

---

[4] <u>Akins</u> involved the one-year time limit for filing a 28 U.S.C. § 2255 motion, which
similarly provides for later possible commencement dates.  *See* § 2255(f)(2) (commencing the time
from the date a government created unconstitutional impediment to filing is removed, if the movant
was prevented from making a motion by such governmental action).

filing." Holland, 560 U.S. at 649. As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly." Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014). Equitable tolling is assessed on a case-by-case basis, considering the specific circumstances of the case. Hutchinson v. Florida, 677 F.3d 1097, 1098 (11th Cir. 2012); see Holland, 560 U.S. at 649–50 (clarifying that the exercise of a court's equity powers must be made on a case-by-case basis). A petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory. Hutchinson, 677 F.3d at 1099. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." Holland, 560 U.S. at 653; see also Smith v. Comm'r, Ala. Dep't of Corr., 703 F.3d 1266, 1271 (11th Cir. 2012) (per curiam) (acknowledging petitioners are not required "to exhaust every imaginable option, but rather to make reasonable efforts"). Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period. Cole, 768 F.3d at 1158 (quotation marks and citation omitted).

Petitioner alleges that throughout his incarceration since 1989, he was denied adequate access to his legal material, the law library, persons trained in the law, and "stationery supplies" during his six "stints" in administrative/disciplinary confinement, which lasted weeks and sometimes months (ECF No. 21 at 6, 10–12, 22–25). Petitioner contends his denial of access to the courts during these periods is evidenced by grievances he submitted to prison officials, copies of which he submitted to the court marked as Exhibits 4, 4a, 5, 5a, 6, 6a, 7, 8, 9, and 13 (*see* ECF No. 21 at 11–12, 22–25, 34–42, 47–48). The grievances are dated May 4, 2000, September 19, 2000, November 6, 2000, December 25, 2000, February 7, 2001, April 11, 2001, and April 24, 2013 (*id.* at 34–42, 47–48).

Petitioner has not shown that the lack of access to his legal material, the law library, persons trained in the law, and "stationery supplies" during his six periodic "stints" in administrative/disciplinary confinement between March of 2000 and April of 2013 constituted a state-created impediment which justifies commencement of the limitations period after April 28, 2014 (the "finality date"), or that such circumstances during that time prevented him from filing a timely § 2254 petition during the period April 28, 2014 to April 28, 2015. Specifically with regard to Petitioner's placement in disciplinary confinement in April of 2013, the state court record demonstrates that

Petitioner filed documents in the Florida First DCA and the Supreme Court of Florida after April of 2013, specifically, on May 30, 2013, June 20, 2013, June 27, 2013, August 13, 2013, September 13, 2013, and November 7, 2013 (*see* Exs. AA, BB, CC, DD, EE, FF).  Petitioner failed to demonstrate that his separation from legal materials and services during his stints in disciplinary confinement justify application of a statutory commencement trigger later than April 29, 2014 (the "finality date" of Petitioner's convictions), or equitable tolling of the one-year period from April 29, 2014 to April 29, 2015.

Petitioner additionally alleges that in March of 2011, while he was still on death row at the Florida State Prison, he was placed in a solitary cell for 30 days for disobeying an order (ECF No. 21 at 6, 8–9, 13–16, 49–52).  Petitioner alleges while he was in the cell, an officer advised him that his property had been confiscated for security reasons, and that he would be required to send the "bulk" or "majority" of his legal materials to his family within thirty days, or it would be destroyed, pursuant to Rule 33-602.201 of the Florida Administrative Code (*id.*).

The administrative rule pursuant to which Petitioner was required to send legal materials to his family, Rule 33-602.201 provides, in relevant part:

(6)  Storage of Excess Legal Materials.

(a)  Definitions.

1.  Active Legal Material:  Pleadings (i.e., complaint, petition or answer), legal motions and memoranda, affidavits, court orders and judgments, correspondence, and other documents (including discovery and exhibits), in or directly pertaining to an inmate's own pending, active or prospective cases or lawsuits before the courts or administrative agencies.

2.  Inactive Legal Material:  Legal material not related to the inmate's ongoing litigation, or not directly pertaining to an inmate's pending, active or prospective cases or lawsuits before the courts or administrative agencies.

3.  Excess Active Legal Material:  Active legal material that exceeds the capacity of storage available in the inmate's locker.

4.  Excess Inactive Legal Material:  Inactive legal material that exceeds the capacity of storage available in the inmate's locker.

(b)  Storage of Legal Material.  Each inmate is authorized to possess in his or her assigned housing area his own active or inactive legal material not exceeding the capacity of storage available in the inmate's assigned locker.

(c)  Storage of Excess Active Legal Material.

1.  A secure space for storing excess active legal material will be provided for inmates to use to store active legal material that cannot be contained in the inmate's locker.  Each facility will identify a secure area for such storage.

2.  When it is determined by the assistant warden or Chief of Security that an inmate has legal material that cannot be contained in the inmate's assigned locker, the inmate shall be given a written order from an employee of the Department providing:

a.  The inmate shall have one week (seven calendar days) to organize and inventory his legal material and separate excess inactive legal material from excess active legal material; and

b.  If, after organizing and inventorying his or her legal material the inmate will not be able to fit active legal material in his assigned inmate locker, the inmate shall complete Form DC6-2006, Request for Storage of Excess Active Legal Material, and Form DC6-2008, Excess Active Legal Material Inventory List, to be submitted to the warden for review.  Forms DC6-2006 and DC6-2008 are incorporated by reference in subsection (17) of this rule.

3.  If time is needed in excess of seven calendar days for the inmate to organize and inventory his legal material, the inmate shall, prior to the expiration of the seven calendar day period, submit an inmate request to the warden to ask for additional time to complete his review. The inmate shall specify the basis for the request for additional time and how much additional time will be required to complete organizing and inventorying legal material.  The total period of time for the inmate to complete this review shall not exceed 30 calendar days.

4.  In the event the inmate refuses to organize and inventory his legal material as ordered, the inmate shall receive a disciplinary report. If the inmate refuses to comply after being ordered a second time, the inmate shall receive a disciplinary report and the Department shall organize and inventory the material.  The inventory shall be performed in the same manner as the staff review described in subparagraph 5. below.

5.  Prior to placing an inmate's active legal material into excess storage, the inmate's legal material shall be subject to a cursory review by Department staff to ensure compliance with Department rules regarding utilization of excess storage, approved property, and contraband.  This review will only be conducted in the presence of the inmate.  Only the case style, signature on the document (if any) and

letterhead (if any) may be read.  Any material that is determined by staff to not be active legal material, shall be collected by two designated employees and placed in box(es) with interlocking flaps for storage pending disposition.  The warden or designee shall notify the inmate on Form DC6-2007, Excessive Inactive Legal Material Disposition Determination, of the determination that the inmate has 30 days to make arrangements to have the excess inactive legal material picked up by an approved visitor or sent to a relative or friend at the inmate's expense, as provided in subparagraph (6)(c)6., or the institution will destroy it. This notification shall be provided to the inmate within three calendar days of the determination unless the inmate provides verification of a deadline that cannot be met within the three day waiting period.  The 30 day limit shall not include any time that a grievance appeal is pending provided the inmate has provided the warden or the warden's designee with the written notice required in subparagraph (6)(c)7.  Form DC6-2007 is incorporated by reference in subsection (17) of this rule. For purposes of this subparagraph, the warden's designee may include the property room supervisor.

6.  The cost of sending the inactive legal material to a relative or friend shall be collected from any existing balance in the inmate's trust fund account.  If the account balance is insufficient to cover the cost, the account shall be reduced to zero.  If costs remain unpaid, a hold will be placed on the inmate's account and all subsequent deposits to the inmate's account will be applied against the unpaid costs until the debt has been paid.

7.  If the inmate intends to appeal the determination and wishes to have the order to dispose of excess inactive legal material within 30 days stayed while the appeal is proceeding, the inmate must provide written notice to the warden on Form DC6-236, Inmate Request, that he intends to appeal the determination to the Office of the Secretary.  The written notice must be filed within 15 calendar days of the determination.  It shall include a statement by the inmate that the inmate intends to appeal the determination and must specifically identify the documents or papers

on which the appeal is to be based.  Form DC6-236 is incorporated by reference in Rule 33-103.019, F.A.C.

8.  If the inmate fails to file written notice with the warden within 15 calendar days of the determination, fails to provide Form DC6-2007, Excess Inactive Legal Material Disposition Determination, as an attachment to the appeal, addresses more than one issue, or in any other way violates the grievance procedure as described in Chapter 33-103, F.A.C., the appeal shall be returned without response to the issue raised.

9.  If the inmate's grievance appeal is denied and the inmate wishes to appeal the determination to the courts and wishes to have the order to dispose of the excess inactive legal material within 30 days stayed while the court appeal is proceeding, the inmate must provide written notice to the warden on Form DC6-236, Inmate Request, that he intends to appeal the determination to the courts.  The written notice must be filed within 30 calendar days of receipt of the response from the Office of the Secretary, must identify the court in which the appeal has been filed, must include a statement by the inmate that the inmate intends to appeal the determination, and must specifically identify the documents or papers on which the appeal is based.

10.  If the inmate's appeal is denied, the inmate shall have 30 days to make arrangements to have the materials picked up by an approved visitor, relative, or friend, or pay to have the material sent to one of these approved individuals.  If the material is not picked up or mailed out within 30 days, the institution shall destroy it.

11.  Prior to being stored in excess storage, excess active legal material shall be placed in box(es) with interlocking flaps, shall be numbered in sequential order, and shall have the inmate's name and Department number clearly written on the top and side of each box. Prior to being sealed, the box(es) shall be inspected by staff, in the presence of the inmate, for contraband.  Each box shall be sealed in the presence of the inmate prior to being placed into excess storage.  Form DC6-2008, Excess Active Legal Material Inventory List, shall be completed or

updated by the inmate before the box(es) are sent or returned to excess storage.

12.  In no event will an inmate's active legal material be destroyed or removed from the facility except, in accordance with procedures for disposition of inmate personal property provided in this rule, as authorized and directed in writing by the inmate.

13.  The department will not store case law, legal texts or books, or multiple copies of legal material as excess active legal material.

(d)  Excess Inactive Legal Material.  Excess inactive legal material shall be sent out of the facility by the inmate at the inmate's expense, as provided in subparagraph (6)(c)6.  If the inmate does not want to pay to send the excess inactive legal material out, this material will be destroyed in accordance with this rule and Rules 33-602.201 and 33-602.203, F.A.C., regarding inmate property and contraband.

(e)  Inmate Access to Excess Active Legal Material.

1.  When an inmate wants access to a box of active legal material stored in excess storage, the inmate shall:

a.  Notify the property room officer by submitting Form DC6-236, Inmate Request; and

b.  Clearly indicate by number the box to be requested.

2. Barring an emergency need demonstrated by the inmate, e.g., a court deadline that requires an immediate response by the inmate, the property room officer shall provide the requested box to the inmate within three workdays from date of receipt of the request, which shall be date stamped when received.

3.  After receipt of a box of legal materials from excess storage, the inmate shall then be permitted to exchange those active legal

materials in the requested box with other active legal materials in the inmate's assigned locker.

4. The legal material to be exchanged shall be inspected for contraband by staff and sealed in the presence of the inmate prior to the box being returned to excess storage.

5. Form DC6-2008, Excess Active Legal Material Inventory List, shall be used and updated each time legal material is stored in or exchanged with legal material from excess storage.

(f) Transfer.  An inmate being transferred to another institution shall be permitted to take along all of the inmate's legal material.  The transferred inmate's legal material must be maintained and possessed in accordance with the receiving institution's available locker storage space.

Fla. Admin. Code r. 33-602.201(6).

Petitioner alleges his mother, Mary Robinson, and his sister, Artrell Robinson, picked up eight (8) boxes of his legal materials in the summer of 2011 (ECF No. 21 at 6, 8–9, 13–16, 49–52).   Petitioner alleges his mother gave the materials to Petitioner's brother, Edward G. Robinson, Jr., at Petitioner's request (*id.*).  Petitioner alleges he instructed his brother, who is a "certified law clerk," to type documents that Petitioner provided to him and then mail the documents to the courts (*id.*).  In support of these allegations, Petitioner submitted affidavits from his mother, sister, and brother (*id.* at 43–46).  The affidavit of Petitioner's brother states that he agreed to type

handwritten documents provided to him by Petitioner, and then mail the documents

to the courts (*id.* at 45).

Petitioner failed to demonstrate that the requirement that he send excess legal

materials to his family in the summer of 2011 constituted a state-created impediment

under § 2244(d)(1)(B).  Petitioner has not established that Rule 33-602.201(6) is

unconstitutional on its face or as applied to him.  Further, the alleged impediment

obviously did not prevent Petitioner from filing his § 2254 petition, because he was

able to do so despite the fact that the alleged impediment still has not been removed

(i.e., the legal materials have not been returned to him).

Additionally, Petitioner has not shown that storage of his excess legal materials

with his family in 2011 prevented him from filing a § 2254 petition during the period

April 28, 2014 to April 28, 2015.  Indeed, Petitioner alleges he filed a § 2254 petition

in January of 2015 (although the court does not accept as true, for reasons discussed

*infra*, Petitioner's allegation that he filed a § 2254 petition in January of 2015, this

allegation constitutes an admission that Petitioner was not prevented from filing a

§ 2254 petition between April 28, 2014 and April 28, 2015).  Petitioner failed to

demonstrate a connection between the storage of his excess legal materials with his

family in 2011, and the filing of his § 2254 petition after April 29, 2015. Therefore, he failed to show that equitable tolling of the limitations period is justified.

As a final matter, the court will address Petitioner's allegation that he filed a § 2254 petition with this court in January of 2015. Petitioner alleges his brother, Edward Robinson, mailed Petitioner's § 2254 petition to this court on January 5, 2015 (ECF No. 21 at 9, 13–16). Edward Robinson's affidavit states that upon receiving "word" from Petitioner, Robinson typed a § 2254 petition and mailed it to this federal court on January 5, 2015, through the U.S. Postal Service (*id.* at 45–46). Edward Robinson states that "thereafter," Petitioner inquired of him regarding the status of the § 2254 petition, and Robinson told Petitioner to contact the court (*id.* at 46). Petitioner alleges "after a questionable amount of time had elapsed" without receiving acknowledgment from the court regarding receipt of the § 2254 petition, Petitioner filed a notice of inquiry requesting the status of his petition (*id.* at 22).

Petitioner's allegation that he filed a § 2254 petition in January of 2015 is contradicted by his statement on page 12 of the instant § 2254 petition, that the instant petition is the first § 2254 petition he filed, and that he has not previously filed a § 2254 petition or other pleading, regarding the validity of his state court confinement, in any federal court (ECF No. 1 at 12). Petitioner signed the instant petition, including

the aforementioned statement, on October 8, 2015, with a declaration, under penalty of perjury, that the statements made in the petition are true and correct (*id.* at 52). Although courts are generally required to accept as true the factual allegations in an initial pleading for purposes of a motion to dismiss, courts need not accept as true internally inconsistent factual claims.  *See* Willis v. Arp, 165 F. Supp. 3d 1357, 1359 (N.D. Ga. 2016) ("While courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive therefrom, they need not accept factual claims that are internally inconsistent . . . .")  (quoting Sterling v. Provident Life & Acc. Ins. Co., 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007)); Hancock v. Hood, 686 F. Supp. 2d 1240, 1255 (S.D. Ala. 2010) (rejecting plaintiff's claim because supporting factual allegations were conflicting) (citing Campos v. I.N.S., 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998)); Response Oncology, Inc. v. Metrahealth Ins. Co., 978 F. Supp. 1052, 1058 (S.D. Fla. 1997) (the court need not accept as true internally inconsistent factual allegations or unwarranted deductions); *accord* Battle v. Cent. State Hosp., 898 F.2d 126, 130 n.3 (11th Cir. 1990) (allegations that are contradicted by other allegations in the complaint may constitute grounds for dismissal of a claim).

## III.    CONCLUSION

Petitioner's § 2254 petition was not filed within the one-year statutory limitations period of § 2244(d)(1). Therefore, Respondent's motion to dismiss should be granted, and the § 2254 petition dismissed with prejudice as untimely.

IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.  Rule 11(a) additionally provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254

Cases.  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Respondent's motion to dismiss (ECF No. 15) be **GRANTED**.

2.      That the habeas petition (ECF No. 1) be **DISMISSED** with prejudice as untimely.

3.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of December 2016.

_/s/ Elizabeth M. Timothy_____
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**